1  **HAGENS BERMAN SOBOL SHAPIRO LLP**
2  Reed R. Kathrein (SBN 139304)
   Lucas E. Gilmore (SBN 250893)
3  715 Hearst Avenue, Suite 300
   Berkeley, California 94710
4  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
5  reed@hbsslaw.com
   lucasg@hbsslaw.com

6  *Liaison Counsel for Plaintiffs*

7  **LABATON KELLER SUCHAROW LLP**
   Eric J. Belfi (*pro hac vice forthcoming*)
8  Francis P. McConville (*pro hac vice forthcoming*)
   Guillaume Buell (*pro hac vice forthcoming*)
9  140 Broadway
   New York, New York 10005
10 Telephone: 212-907-0700
   Facsimile: 212-818-0477
11 ebelfi@labaton.com
   fmcconville@labaton.com
12 gbuell@labaton.com

13 *Counsel for Plaintiffs*

14 [Additional Counsel Appears on Signature Page]

15              **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
16

17 OAKLAND COUNTY EMPLOYEES'        Case No. __'24CV1804 AJB BLM__
   RETIREMENT SYSTEM and
18 OAKLAND COUNTY VOLUNTARY         CLASS ACTION
   EMPLOYEES' BENEFICIARY
19 ASSOCIATION, Individually and on  **COMPLAINT FOR VIOLATIONS**
   Behalf of All Others Similarly Situated,  **OF THE FEDERAL SECURITIES**
20                                   **LAWS**
                     Plaintiffs,
21                                   DEMAND FOR JURY TRIAL
           v.
22
   DEXCOM, INC., KEVIN R. SAYER,
23 JEREME M. SYLVAIN, and SEAN
   CHRISTENSEN,
24
                     Defendants.
25

26

27

28

---

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**INTRODUCTION**

Plaintiffs Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association (together, "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following based upon personal knowledge as to Plaintiffs' own acts and upon information and belief as to all other matters based on the investigation conducted by and through counsel, which included, among other things, a review of the public U.S. Securities and Exchange Commission ("SEC") filings of DexCom, Inc. ("DexCom" or the "Company"), Company press releases, conference call transcripts, investor presentations, analyst and media reports, and other public reports and information regarding the Company.  Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a class action brought on behalf of a "Class" of all persons and entities who purchased or otherwise acquired DexCom securities between April 28, 2023 and July 25, 2024, inclusive (the "Class Period").  Plaintiffs bring this action seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, promulgated thereunder.

2.      DexCom, headquartered in San Diego, California, is a medical device company that manufactures continuous glucose monitoring systems ("CGMs") for diabetes management.   Over the course of 2022 and in early 2023, DexCom commercially launched its "G7" CGM in Europe and in the United States.  As the next generation of its key product line, DexCom's growth was premised on a successful G7 roll-out.  To fuel this growth, the Company realigned and expanded its sales force.

3.      Throughout the Class Period, Defendants (defined herein) investors touted the success of its G7 launch, claiming that "the market's reception to [DexCom's latest CGM] has been exceptional" and "[w]e have a really incredible track record of efficient growth."   This action alleges that Defendants intentionally or recklessly misled

investors by failing to disclose that: (a) DexCom's sales force expansion strategy was causing slow customer growth; (b) DexCom's sales force expansion strategy was undermining relationships with durable medical equipment ("DME") distributors, its largest sales channel, leading to lower-margin revenue; (c) DexCom's deteriorating relationships with DME distributors were causing the Company to lose significant market share to competitors; and (d) as a result of the foregoing, Dexcom's Class Period statements about its business, operations, and prospects were false and misleading. As a result of these materially false and misleading statements and omissions, DexCom stock traded at artificially high prices during the Class Period.

4. Beginning on April 25, 2024, investors began to learn about problems with DexCom's sales force expansion when Defendants revealed that the Company had to further realign its sales force. Despite these issues, DexCom increased its 2024 sales forecast. On this news, DexCom's stock price *declined $13.67, or 9.9 percent*, to close at $124.34 per share on April 26, 2024.

5. Then, on July 25, 2024, Dexcom reported lower-than-expected sales for the second quarter of 2024 and cut its 2024 sales forecast. Defendant attributed its weak results and reduced guidance to slower-than-expected new customer growth in the DME channel where the Company lost market share. Defendants acknowledged that its sales force realignment and expansion strategies were "disruptive" and had caused eroding relationships with the Company's DME channel partners. On this news, DexCom's stock price *dropped $43.85, or 40.7 percent*, to close at $64.00 per share on July 26, 2024.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and Class members have suffered significant losses and damages.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because DexCom is headquartered in this District, and because many of the acts and conduct that constitute the violations of law complained of herein, including the dissemination to the public of materially false and misleading information, occurred in this District.

10.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

11.    Plaintiffs Oakland County Employees' Retirement System and Oakland County Voluntary Employees' Beneficiary Association are governmental employee benefit plans for employees and retirees of Oakland County, Michigan.  As indicated on the certification submitted herewith, Plaintiffs purchased shares of DexCom common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

12.    DexCom, Inc. is a Delaware corporation with its principal executive offices located at 6340 Sequence Drive, San Diego, CA 92121.  During the Class Period, the Company's common stock traded on the NASDAQ Global Select Market (the "NASDAQ") under the symbol "DXCM."

13.    Defendant Kevin R. Sayer was, at all relevant times, the Executive Chairman, Chief Executive Officer, and President of DexCom.

14.     Defendant Jereme M. Sylvain was, at all relevant times, the Executive Vice President, Chief Financial Officer, and Chief Accounting Officer of DexCom.

15.     Defendant Sean Christensen was, at all relevant times, Vice President, Finance and Investor Relations at DexCom.

16.     Defendants Sayer, Sylvain, and Christensen are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of DexCom's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

17.     DexCom and the Individual Defendants are collectively referred to herein as the "Defendants."

18.     DexCom is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to DexCom under *respondeat superior* and common law agency principles.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**COMPANY BACKGROUND**

20. Founded in 1999, DexCom develops, manufactures, and distributes CGM systems for diabetes management. DexCom primarily sells CGMs through two sales channels. Traditionally, the largest channel for DexCom's products has been sales through DME distributors. More recently, pharmacies have become a critical sales channel for DexCom as many insurers have switched patients from DME to pharmacy channels.

21. DexCom's G7 CGM model, designed and distributed as an upgrade over the prior G6 model, received clearance to be sold to people with diabetes in the European Union in early 2022. Thereafter, the Company began to sell the G7 in multiple European countries. The G7 was approved for use in the United States in December 2022, and commercially launched there in early 2023. As a key strategic initiative to grow international and domestic G7 sales, DexCom realigned and expanded its sales force.

**MATERIAL MISREPRESENTATIONS AND OMISSIONS**

**DURING THE CLASS PERIOD**

22. The Class Period begins on April 28, 2023, the day after DexCom issued a press release announcing financial results for the first quarter of 2023, as well as first publishing their 2023 financial guidance, including expected "[r]evenue of approximately $3.400 - 3.515 billion (17-21% growth)." DexCom also published 2023 guidance for three margin metrics: non-GAAP gross profit margin of 62-63%; non-GAAP operating margin of approximately 16.5%; and adjusted EBITDA margin of approximately 26%.

23. That same day, Defendants participated in a related call with analysts and investors. On that call, Defendant Sayer touted DexCom's "big sales force expansion," along with its relationship with DME customers, stating that:

> ***We continue to evaluate our marketing and our full-on direct distribution efforts to see what adjustments need to be made to create more awareness. We worked very hard with our channel partners and***

*believe we are in a very good position with them to go take on this front.*
So it's about creating awareness.  It's about making it easier for patients
to get their product and use it.  I've been out in the field a few times and
the one thing I am definitely hearing as I speak with a lot of the primary
care physicians who are going to serve this market is G7 is so much easier
to use and so easy-to-use versus G6.  They view this as a very real and a
very strong opportunity for their patients to achieve better outcomes.  So
we know we have the right product.  We'll just work on creating
awareness at the proper places to get it out there, but we're comfortable
that people will wear it all the time once they get started.

24.     On July 27, 2023, Defendants issued a press release reporting its financial

results for the second quarter of 2023.  In the press release, the Company increased its

2023 sales guidance in the range of $3.500 to 3.550 billion (20-22% year-over-year

growth).  DexCom also published 2023 guidance of non-GAAP gross profit margin of

63%; non-GAAP operating margin of approximately 17%; and adjusted EBITDA

margin of approximately 26.5%.

25.     That same day, Defendants participated in a related call with analysts and

investors.  On that call, when asked about DexCom's sales force, Defendant Sayer

stated that:

The biggest challenge always is particularly in the Medicare environment
is document -- getting the documents and getting to the proper distribution
channel to serve these patients because they all pretty much -- all go
through -- those who are not in Medicare Advantage, all go through the
DME channel.  And so, Document gathering, particularly in a PCP office,
where they don't see all people with diabetes all the time.  And the use of
these documents is the biggest challenge, but we anticipated that.  And *we
worked very closely with our distributors to streamline that process as
best we can.  They've done a very good job, helping us get our product
out and helping us continue to grow.  As we talked earlier our biggest
Medicare of new patient add quarter ever, those folks all went through
distributors.  So that's a good metric for us and shows that they are
doing very well.*

I think it's been pretty much as planned. And we don't have a specific PCP
sales force. Our reps have geographic territories, and they call on both
specialty diabetes clinics and primary-care physicians.  *So they truly have
a business to run in their individual territories.  And certainly, we know
who they call on and where they spend the majority of their time, but it's
our job to drive that business and bring those offices along.  They do a
really good job of that.*

26.     On October 26, 2023, Defendants issued a press release announcing

financial results for the third quarter of 2023 and issuing another increase to its 2023

sales guidance in the range of $3.575 - 3.600 billion (for 23-24% year-over-year growth).  DexCom also published 2023 guidance of non-GAAP gross profit margin of 64%; non-GAAP operating margin of approximately 19%; and adjusted EBITDA margin of approximately 28%.

27.     That same day, Defendants participated in a related earnings call with analysts and investors.  In opening remarks on that call, Defendant Sylvain stated that:

> **Between the ongoing success of our G7 launch and significant expansion of coverage for Dexcom this year, our US business is really hitting its stride.  This is particularly noticeable when looking at our new customer start trends which again outpaced our expectations for this quarter**.
>
> This dynamic has now played out for several quarters in a row, and we are seeing the direct result of that continued momentum.  In the third quarter, we saw revenue growth accelerate compared to last quarter and we delivered our fastest quarterly growth rate in over two years.  International revenue grew 33% totaling $261 million in the third quarter. International organic revenue growth was 30% for the third quarter. We continue to execute incredibly well in our international markets.  **Our product portfolio strategy, ongoing access work and growing commercial traction helped us again gain share this quarter**.  We had a particularly strong quarter across our European footprint as we saw growth remained similar to the accelerated level we saw in the second quarter.

28.     On January 8, 2024, Defendants issued a press release announcing financial results for fourth quarter and the full year 2023, as well as issuing 2024 sales guidance between $4.15 and $4.35 billion, representing year-over-year growth of 16% to 21%.  DexCom also published 2024 guidance of non-GAAP gross profit margin of 63-64% and non-GAAP operating margin of approximately 20%.

29.     The same day, during the Company's presentation at the J.P. Morgan 42nd Annual Healthcare Conference 2024, Defendant Sylvain elaborated on DexCom's justifications for the guidance, stating, in pertinent part:

> I think when you think about guidance, there's a couple of different things in there.  So first and foremost, what is now excluded in that number, the raw top line number is our non-CGM business, with the expectation that, that comes out of the business.  So, there is an assumption there.
>
> **In terms of that growth, it does assume another year of record new patients.  So, I think global record new patients**.  I think you can presume that there.  It does - when Kevin said a modest contribution from our non-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

insulin product, our 15-day product, we assume about 1 point of revenue associated with that.  So that gives you some context around that.

And the rest is healthy growth really across the board in basal and the intensive population globally.  *As you move down the line, you think about gross margin, if you rewind back to 2023, we really started 2023 with a 62% to 63% gross margin, and we're going to outpace that this year*.  Some of that is just due to the timing of transition from G6 to G7.  So Kevin alluded to it earlier.  The expectation is, as we move through that transition, there's a little bit of that.  So, some of that is embedded.  It doesn't change our long-term plans.  Ultimately, we are on track for the cost profile we would expect on G7 at $10 sensor.  And I would expect us to continue to make progress.

There is no 15-day intensive insulin or G-Series product assumptions on gross margin in there.  So hopefully, that's a little bit helpful.  And then the continuation of leverage through the P&L, I think you'd expect to continue to see us do that. *We had a really strong year in 2022, 2023 in terms of driving leverage.  That leverage continues as we move into 2024.*

30.     On February 8, 2024, Defendants published their financial results for the fourth quarter and the full year 2023 and reaffirmed the 2024 guidance they issued in January.  During the same-day earnings call, Defendant Sylvain stated, in pertinent part:

Turning to 2024 guidance. As we stated last month, we anticipate total revenue to be in the range of $4.15 billion to $4.35 billion, representing organic growth of 16% to 21% for the year.  This guidance assumes continued momentum in the type 2 basal-only population in the U.S., the expansion of Dexcom ONE on the G7 platform into new geographies, and the launch of Stelo in the summer of 2024.  It also assumes the divestiture of our non-diabetes distribution business in Australia and New Zealand this quarter, which represented around $30 million of revenue in 2023.

From a margin perspective, we expect full year non-GAAP gross profit margin to be in a range of 63% to 64%, operating profit margin to be approximately 20%, and adjusted EBITDA of approximately 29%. *Our gross margin guidance reflects the ongoing conversion from G6 to G7 within our customer base and the associated scale that comes with that process.*  Below gross margin, we'll continue to be very diligent with our spend in 2024, while investing strategically behind multiple growth opportunities.

31.     On the same call, Defendant Sayer tied the Company's revenue growth to its sales force expansion strategy, stating:

*There is a direct correlation to G7 launching and the acceleration of our growth*. It really was an important event.  And the other thing that, that just as a consequence of what you saw, again, *this supports what we're doing in the U.S. with respect to our field sales expansion*.

We do need to spend more time with physicians who aren't as familiar with our technology as they would have been in the past.  And as I said on the call earlier, where we call on somebody, we win.  We do very well.  So we need more calls.  ***We needed more feet on the street and more voice, given the acceleration that we saw and the good things that we saw happen over the second half of the year.***  So it all flows together nicely.

32.    On March 5, 2024, Defendants presented at the 45th Annual Raymond James Institutional Investors Conference 2024.  During the presentation, Defendants again reiterated their 2024 guidance, focusing on their faith in the G7 product.   In pertinent part, DexCom's Director of Corporate Affairs and Head of Investor Relations, Sean Christensen, stated the following:

For 2024, we expect this significant growth to continue. We've guided our top line growth for the year to 16% to 21% organic growth.  Gross margin for the year is 63% to 64%, which is relatively flat, slightly down versus 2023.   ***Really, we're in the process of transitioning from our G6 hardware platform to our G7.  And so as we build volumes, that will help us to scale and drive greater margin efficiency at the gross margin level***, continued operating margin expansion to about 20% and adjusted EBITDA margin of 29% forecast for this year.  You see some of the assumptions there.  But I think for us, this is a year in which we build on the access expansion that we had last year and continue to capitalize both within the U.S. and internationally.

[…]

And at DexCom CGM with G7 is also the most covered CGM in the U.S. We fought incredibly hard to ensure that our patients not only have access to the technology, but have as low of an out-of-pocket cost as possible, given that they rely on this for managing a complex condition.  ***And in doing so, we've been able to really expand our coverage and lead the industry with robust coverage***.

33.    The statements contained in ¶¶ 22-32 were materially false and/or misleading because Defendants failed to disclose that: (a) DexCom's sales force expansion strategy was causing slow customer growth; (b) DexCom's sales force expansion strategy was undermining relationships with DME distributors, its largest sales channel, leading to lower-margin revenue; and (c) DexCom's deteriorating relationships with DME distributors were causing the Company to lose significant market share to competitors.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## THE TRUTH BEGINS TO EMERGE WHILE

## <u>DEXCOM CONTINUES TO MISLEAD INVESTORS</u>

34.    Investors began to learn the truth behind Defendants' misrepresentations on April 25, 2024, when DexCom reported its first quarter 2024 results.  During the same-day earnings call with investors, the Company revealed that it had to further realign its sale force.  In opening remarks, Defendant Sayer admitted that DexCom had been forced to make changes to its sales force strategy in the following excerpt:

> As a result, we announced an expansion of our sales force this past quarter.  We were blown away by the level of interest and the quality of talent that we were able to attract for these roles.  By the end of the first quarter, we had already completed our hiring and trained these new reps.  This team is excited to hit the ground running and we look forward to seeing them build momentum over the course of the year.  As part of this initiative, **beginning in the second quarter, we are also taking steps to optimize the structure of our sales team to be most effective with our call points across endocrinologists and primary care physicians as well as leading practitioners in maternal-fetal medicine**.  We expect our new team in this upgraded structure to help us better capitalize on the significant opportunities ahead.

35.    During the question-and-answer portion of the earnings call, Defendant Sayer provided the following response to a questions about the changes to DexCom's sales force expansion strategy:

> As we look out over what we need to accomplish and where we needed more emphasis in the field, there were a couple of things happen.  **Number one, we realized as we had our reps who were calling on high prescribers, also calling on a number of people who weren't prescribers are doing a bunch of -- going and finding new prescribers that we may not be paying enough attention to our high prescribers**.
>
> And so as we've set things up, we do have a set of folks who spend more time in endocrinology and high-prescribing diabetologist world than with primary care.  **At the same time, we needed people to call on more primary care physicians.** Consistently, we have learned over and over again that where we call on people, we win. And so we need to call on more folks, get more people out there. We've been much more aggressive with our sampling program over the past several months. We need to get samples to more individuals, we need to knock on more doors, and have more relationships.
>
> A third element of that is education. As we get to some of these offices where we have somebody who is only written two or three CGM scripts, **we've always had certainly some account managers who are regional people use to help train patients if they don't have doctor training in the office**.  We made a little more investment there.  And then last, there are many doctors, particularly as we get to Stelo and as we get more into the primary care world, who may not even see a rep.  And so we do have more of an internal sales force, again on a

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

regional basis to do more of that work.  So we're trying to go broader and deeper at the same time, deeper with our high prescribers in the endocrinology world, and then broader across all aspects of primary care, including training and supporting patients.

36.    Despite these revelations, on April 25, 2024, DexCom issued an increase to its 2024 sales forecast (updated range of $4.20 to $4.35 billion for 17-21% year-over-year growth) while Defendant Sayer stated, "Dexcom is off to a great start in 2024, delivering another quarter of strong financial results while advancing several key strategic initiatives."

37.    On this news, DexCom's stock price *fell $13.67, or 9.9 percent,* to close at $124.34 per share on April 26, 2024.

38.    On June 5, 2024, Defendants reaffirmed the updated 2024 sales forecast at the 44th Annual William Blair Growth Stock Conference.  During the conference, CFO Sylvain made the following response to an analysts' questions regarding DexCom's progress towards meeting its sale guidance:

> We don't guide the quarters.  So we said things are reasonable. I think it's a reasonable outcome.  ***And in terms of the full year, as of the last quarter, when we issued our earnings, we raised our guidance***.  And so that should give -- ***we obviously beat the Street expectations in the first quarter, raised guidance and continue to do well***.  So I think from that point of view, ***I think we're happy with where we are.  We're happy with our full year guidance.***  We don't guide to the quarters, but we were very comfortable with where folks are sitting for the quarter.

39.    The statements contained in ¶ 36 and ¶ 38 were materially false and/or misleading because Defendants failed to disclose that: (a) DexCom's sales force expansion strategy was causing slow customer growth; (b) DexCom's sales force expansion strategy was undermining relationships with DME distributors, its largest sales channel, leading to lower-margin revenue; and (c) DexCom's deteriorating relationships with DME distributors were causing the Company to lose significant market share to competitors.

## **THE TRUTH IS FULLY REVEALED**

40.    The truth about DexCom's failed sales force expansion strategy was fully revealed on July 25, 2024.  On that date, the Company issued a press release that

---

11

reported disappointing financial results for the second quarter of 2024 and a reduction to its 2024 sales forecast with a statement acknowledging that "our execution did not meet our high standards."

41.     In the related earnings call held the same day, DexCom explained how operational problems impacted its quarterly revenue and 2024 sales forecast.  During the call, Defendant Sylvain explained that "we experienced lower than expected new customer starts in conjunction with our sales force expansion and realignment, particularly in the DME channel."  Defendant Sylvain blamed the poor results on an unfavorable "channel mix," with many customers coming through the lower-margin pharmacy channel, resulting in lower revenue per customer with an impact of "$100 million over the course of the year."  Defendant Sayer further admitted that DexCom's attempted sales force expansion had been a "much more disruptive expansion we've had in the past," and that "DME distributors remain important partners for us in our business, and we've not executed well this quarter against these partnerships."

42.     Defendant Sylvain reiterated the impact of these issues on the Company's reduced full-year guidance for 2024, stating, in pertinent part:

> Turning to guidance.  Starting with full year 2024, we are decreasing our revenue guidance to a range of $4.00 billion to $4.05 billion, representing organic growth of 11% to 13% for the year.  As mentioned earlier, **the compounding effect of our slower-than-expected new customer growth in the U.S. DME channel and international business as well as increased pharmacy eligibility resulted in the need to recalibrate the guide.  Our updated guidance reflects these dynamics and assumes a longer ramp in productivity in our U.S. sales force**.  For margins, we are reducing our non-GAAP gross profit margin guidance to approximately 63%, while maintaining our prior guidance on non-GAAP operating margin and adjusted EBITDA at approximately 20% and 29%, respectively.

43.     On this news, DexCom's stock price ***dropped $43.85, or 40.7 percent***, to close at $64.00 per share on July 26, 2024.

44.     Multiple securities analysts who had been following DexCom lowered their price targets in response to these disclosures.  For example, J.P. Morgan, while cutting their price target nearly in half, cited the Company's "significant" shortfall and

"damaged credibility," and stated that "we feel very confident that this is due to multiple self-inflicted issues rather than a market growth issue."

45. Similarly, Bank of America noted that the earnings result was a "credibility hit" for DexCom, and that "We still do not fully understand how a business that should be predictable with recurring revenue could see such an outsized surprise in a single quarter." The analyst further stated that DexCom "admittedly does not even fully understand why the share loss in DME happened" and that it "still needs to unpack what happened in DME over the course of the year."

## POST-CLASS PERIOD DISCLOSURES

46. Dexcom further revealed the severity of its operational and sales issues during the Wells Fargo Healthcare Conference call held on September 4, 2024. During that call, Defendants addressed the Company's declining market share loss resulting from its sales execution problems. For example, when asked why competitors like Abbott Laboratories were increasing their market share in the DME channel, Defendant Sayer stated that the sales force realignment caused "a big reduction in referrals from us to the DME providers in the second quarter that didn't fit very well and didn't sit very well with our DME partners." When asked about the steps DexCom was taking to address competitor Abbott Laboratories' increasingly dominant position in the DME channel, Defendant Sayer responded:

> With respect to our DME distributor relationships. We are scheduling top-to-top meetings throughout the organization, and I'm personally having phone calls with the CEOs of our top distributors as well, and those phone calls will continue **on a regular basis to make sure we're doing what we need to in that channel to get back on the solid ground and then eventually get back to the place where we're on equal foot and where we're, where we're supposed to be.**

> So, we've certainly turned up the intensity. We've learned a lot through this, and **we're putting literally the measures in place to get us back to where we need to be.** But it's a process, Larry. This is not something we're going to fix in we belong and fix in 2 weeks, it can take us a while to get back to where we need to get.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this class action under Federal Rule of Civil Procedure 23 on behalf of themselves and a class of all persons and entities who purchased or otherwise acquired DexCom securities during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of DexCom, and their families and affiliates.

48.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of July 18, 2024, there were 400,726,824 shares of DexCom common stock outstanding, owned by thousands of investors. Throughout the Class Period, DexCom stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by DexCom or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

(e)   Whether the price of DexCom stock was artificially inflated; and

(f)   The extent of damage sustained by members of the Class and the appropriate measure of damages.

50.   Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

51.   Plaintiffs will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiffs have no interests that conflict with those of the Class.

52.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Joinder of all Class members is impracticable.

## ADDITIONAL SCIENTER ALLEGATIONS

53.   As alleged herein, Defendants acted with scienter in that Defendants knew, or recklessly disregarded, that the documents and public statements they issued and disseminated to the investing public in the name of the Company, or in their own name, during the Class Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding DexCom, and their control over and/or receipt and/or modification of DexCom's materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

54.   Defendants knew or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

55.    The Individual Defendants, because of their positions with DexCom, controlled the contents of DexCom's public statements during the Class Period.  The Individual Defendants were each provided with or had access to the information alleged herein to be false and misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the investing public and that the positive representations that were being made were false and misleading.  As a result, each of the Individual Defendants is responsible for the accuracy of DexCom's corporate statements and is, therefore, responsible and liable for the representations contained therein.

## LOSS CAUSATION/ECONOMIC LOSS

56.    During the Class Period, as detailed herein, DexCom and the Individual Defendants made false and misleading statements and omissions and engaged in a scheme to deceive the market.  These false and misleading statements and omissions artificially inflated the price of DexCom stock and operated as a fraud or deceit on the Class.  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of DexCom stock fell significantly.  As a result of their purchases of DexCom stock during the Class Period, Plaintiffs and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

57.    Plaintiffs will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

16

1     (c) the Company's stock traded in an efficient market;

2     (d) the misrepresentations alleged would tend to induce a reasonable

3 investor to misjudge the value of the Company's stock; and

4     (e) Plaintiffs and other members of the Class purchased DexCom stock

5 between the time Defendants misrepresented or failed to disclose material facts and the

6 time the true facts were disclosed, without knowledge of the misrepresented or omitted

7 facts.

8   58. At all relevant times, the market for DexCom stock was efficient for the

9 following reasons, among others:

10     (a) as a regulated issuer, DexCom filed periodic public reports with the

11 SEC;

12     (b) DexCom regularly communicated with public investors via

13 established market communication mechanisms, including through regular

14 disseminations of press releases on the major newswire services and through other

15 wide-ranging public disclosures, such as communications with the financial press,

16 securities analysts, and other similar reporting services;

17     (c) DexCom was followed by numerous securities analysts employed

18 by major brokerage firms who wrote reports that were distributed to the sales force and

19 certain customers of their respective brokerage firms and that were publicly available

20 and entered the public marketplace; and

21     (d) DexCom stock was actively traded in an efficient market, including

22 its common stock that was traded on the NASDAQ, under the ticker symbol "DXCM."

23   59. As a result of the foregoing, the market for DexCom stock promptly

24 digested current information regarding DexCom from publicly available sources and

25 reflected such information in DexCom stock prices.  Under these circumstances, all

26 purchasers of DexCom stock during the Class Period suffered similar injury through

27 their purchase of DexCom stock at artificially inflated prices and the presumption of

28 reliance applies.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

60.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiffs and the Class are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972).

## NO SAFE HARBOR

61.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of DexCom who knew that the statement was false when made.

## CLAIMS AGAINST DEFENDANTS

### COUNT I
**Violations of Section 10(b) of the Exchange Act
and SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

62.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

63.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of DexCom stock during the Class Period.

66.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for DexCom stock. Plaintiffs and the Class would not have purchased DexCom stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

67.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their purchases of DexCom stock during the Class Period.

68.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

## COUNT II

3

**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

4       69.     Plaintiffs repeat and reallege the allegations contained in the preceding

5    paragraphs.

6       70.     The Individual Defendants acted as controlling persons of DexCom within

7    the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and

8    their power to control public statements about DexCom, the Individual Defendants had

9    the power and ability to control the actions of DexCom and its employees.  By reason

10   of such conduct, Individual Defendants are liable pursuant to Section 20(a) of the

11   Exchange Act.

12                              **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class,

14   respectfully prays for judgment against Defendants as follows:

15       A.     Determining that this action is a proper class action, designating Plaintiffs

16   as Lead Plaintiff and certifying Plaintiffs as class representatives under Rule 23 of the

17   Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel;

18       B.     Awarding Plaintiffs and the Class compensatory damages against all

19   Defendants, jointly and severally, for all damages sustained as a result of Defendants'

20   wrongdoing, in an amount to be proven at trial, together with pre-judgment interest

21   thereon;

22       C.     Awarding Plaintiffs and the Class their reasonable costs and expenses

23   incurred in this action, including, but not limited to, attorneys' fees and costs incurred

24   by consulting and testifying expert witnesses; and

25       D.     Granting such other, further, and/or different relief as the Court deems just

26   and proper.

27                                 **JURY DEMAND**

28       Plaintiffs demand a trial by jury.

20

1 | Dated: October 8, 2024

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

/s/ *Lucas E. Gilmore*
Reed R. Kathrein (SBN 139304)
Lucas E. Gilmore (SBN 250893)
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Liaison Counsel for Plaintiffs*

**LABATON KELLER SUCHAROW LLP**
Eric J. Belfi (*pro hac vice forthcoming*)
Francis P. McConville (*pro hac vice forthcoming*)
Guillaume Buell (*pro hac vice forthcoming*)
140 Broadway
New York, New York 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
ebelfi@labaton.com
fmcconville@labaton.com
gbuell@labaton.com

*Counsel for Plaintiffs*

**VANOVERBEKE MICHAUD & TIMMONY P.C.**
Aaron L. Castle (*pro hac vice forthcoming*)
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578-1200
Facsimile: (313) 578-1201
acastle@vmtlaw.com

*Additional Counsel for Plaintiffs*

---

21
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION

I, Joseph Rozell, as Chairman of Oakland County Employees' Retirement System ("Oakland County ERS"), hereby certify as follows:

1.        I am fully authorized to enter into and execute this Certification on behalf of Oakland County ERS.  I have reviewed a complaint prepared against DexCom, Inc. ("DexCom") alleging violations of the federal securities laws, and authorize the filing of this pleading;

2.        Oakland County ERS did not purchase securities of DexCom at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.        Oakland County ERS is willing to serve as a representative party in this matter, including providing testimony at deposition and trial, if necessary.  Oakland County ERS fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.        Oakland Country ERS' transactions in DexCom securities during the Class Period are reflected in Exhibit A, attached hereto;

5.        Oakland County ERS sought to serve and was appointed as a lead plaintiff in the following class actions under the federal securities laws filed during the last three years:

*In re Opendoor Technologies Inc. Securities Litigation*, No. 2:22-cv-1717 (D. Ariz.)
*In re Sotera Health Company Securities Litigation*, No. 1:23-cv-0143 (N.D. Ohio)
*Lamontagne v. Tesla, Inc.*, No. 5:23-cv-0869 (N.D. Cal.)
*Genesee County Employees' Retirement System v. Driven Brands Holdings Inc.*, No. 3:23-cv-00895 (W.D.N.C.)

6.        Oakland Country ERS sought to serve, but was not appointed, as a lead plaintiff in the following class action under the federal securities laws filed during the last three years:

*City of Hollywood Police Officers Retirement System v. Citrix Systems, Inc.*,
No. 0:21-cv-62380 (S.D. Fla.)

7.        Oakland County ERS is currently serving as a representative party on behalf of a class in the following action under the federal securities laws filed during the last three years:

*Oakland County Voluntary Employees' Beneficiary Association v. Generac Holdings Inc.*,
No. 2:22-cv-1436 (E.D. Wis.)

8.      Beyond its pro rata share of any recovery, Oakland County ERS will not accept payment for serving as a lead plaintiff or representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 7th day of October, 2024.

Signed by:

*Joseph Rozell*
Chairman
Oakland County Employees'
Retirement System

2

**EXHIBIT A**

**TRANSACTIONS IN DEXCOM, INC.**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Sales | 04/24/2023 | -34.00 | $124.37 | $4,228.73 |
| Sales | 04/25/2023 | -104.00 | $124.11 | $12,906.92 |
| Purchases | 06/02/2023 | 166.00 | $122.44 | ($20,324.54) |
| Purchases | 06/09/2023 | 32.00 | $124.18 | ($3,973.87) |
| Purchases | 06/12/2023 | 70.00 | $125.45 | ($8,781.58) |
| Purchases | 06/13/2023 | 10.00 | $127.34 | ($1,273.38) |
| Sales | 06/30/2023 | -108.00 | $128.62 | $13,890.88 |
| Sales | 07/28/2023 | -110.00 | $132.50 | $14,574.53 |
| Sales | 07/31/2023 | -51.00 | $124.95 | $6,372.39 |
| Sales | 07/31/2023 | -59.00 | $129.72 | $7,653.49 |
| Purchases | 09/01/2023 | 45.00 | $101.74 | ($4,578.49) |
| Purchases | 09/05/2023 | 95.00 | $101.29 | ($9,622.68) |
| Purchases | 09/07/2023 | 200.00 | $105.76 | ($21,152.64) |
| Purchases | 09/07/2023 | 600.00 | $103.26 | ($61,955.76) |
| Purchases | 09/08/2023 | 200.00 | $104.39 | ($20,877.56) |
| Purchases | 09/11/2023 | 100.00 | $104.30 | ($10,429.87) |
| Purchases | 09/12/2023 | 300.00 | $103.89 | ($31,166.58) |
| Purchases | 09/14/2023 | 400.00 | $102.51 | ($41,002.00) |
| Purchases | 09/15/2023 | 500.00 | $98.16 | ($49,081.95) |
| Purchases | 09/18/2023 | 50.00 | $95.58 | ($4,778.82) |
| Purchases | 09/19/2023 | 65.00 | $94.14 | ($6,119.17) |
| Purchases | 09/20/2023 | 70.00 | $92.66 | ($6,486.16) |
| Purchases | 09/21/2023 | 70.00 | $89.44 | ($6,260.53) |
| Purchases | 09/22/2023 | 55.00 | $87.90 | ($4,834.49) |
| Purchases | 09/25/2023 | 175.00 | $85.92 | ($15,036.16) |
| Purchases | 10/04/2023 | 25.00 | $87.06 | ($2,176.42) |
| Purchases | 10/04/2023 | 100.00 | $87.33 | ($8,732.50) |
| Purchases | 10/05/2023 | 90.00 | $81.56 | ($7,340.82) |
| Purchases | 10/06/2023 | 95.00 | $82.11 | ($7,800.36) |
| Sales | 10/06/2023 | -158.00 | $83.23 | $13,149.55 |
| Sales | 10/06/2023 | -163.00 | $83.18 | $13,558.05 |
| Purchases | 10/12/2023 | 65.00 | $77.24 | ($5,020.68) |
| Purchases | 10/12/2023 | 80.00 | $78.88 | ($6,310.04) |
| Sales | 11/02/2023 | -95.00 | $95.14 | $9,038.23 |
| Purchases | 11/15/2023 | 33.00 | $102.92 | ($3,396.48) |
| Purchases | 11/16/2023 | 32.00 | $103.87 | ($3,323.95) |
| Purchases | 11/16/2023 | 38.00 | $104.09 | ($3,955.50) |
| Purchases | 11/16/2023 | 21.00 | $104.84 | ($2,201.55) |

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---:|---:|---:|
| Purchases | 11/17/2023 | 8.00 | $105.55 | ($844.39) |
| Purchases | 11/17/2023 | 7.00 | $105.87 | ($741.09) |
| Purchases | 11/17/2023 | 2.00 | $105.63 | ($211.25) |
| Sales | 11/20/2023 | -40.00 | $108.99 | $4,359.50 |
| Sales | 11/24/2023 | -50.00 | $113.21 | $5,660.25 |
| Purchases | 12/29/2023 | 275.00 | $124.44 | ($34,219.90) |
| Sales | 01/12/2024 | -116.00 | $125.79 | $14,591.44 |
| Sales | 01/12/2024 | -4.00 | $125.31 | $501.22 |
| Sales | 03/28/2024 | -190.00 | $138.70 | $26,353.00 |
| Sales | 04/02/2024 | -129.00 | $136.25 | $17,576.02 |
| Sales | 04/15/2024 | -53.00 | $134.83 | $7,145.85 |
| Sales | 04/16/2024 | -150.00 | $135.76 | $20,363.70 |
| Purchases | 06/06/2024 | 20.00 | $115.29 | ($2,305.87) |
| Purchases | 06/06/2024 | 21.00 | $115.22 | ($2,419.62) |
| Purchases | 06/07/2024 | 202.00 | $115.57 | ($23,344.43) |
| Purchases | 06/07/2024 | 8.00 | $115.49 | ($923.92) |
| Purchases | 06/10/2024 | 84.00 | $115.89 | ($9,734.76) |
| Purchases | 06/10/2024 | 105.00 | $115.49 | ($12,126.48) |
| Purchases | 06/11/2024 | 232.00 | $116.55 | ($27,039.69) |
| Purchases | 06/21/2024 | 2.00 | $115.46 | ($230.93) |
| Purchases | 06/21/2024 | 5.00 | $115.81 | ($579.03) |
| Purchases | 06/21/2024 | 121.00 | $116.47 | ($14,092.81) |

## CERTIFICATION

I, Joseph Rozell, as Chairman of Oakland County Voluntary Employees' Beneficiary Association ("Oakland County VEBA"), hereby certify as follows:

1.     I am fully authorized to enter into and execute this Certification on behalf of Oakland County VEBA.  I have reviewed a complaint prepared against DexCom, Inc. ("DexCom") alleging violations of the federal securities laws, and authorize the filing of this pleading;

2.     Oakland County VEBA did not purchase securities of DexCom at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.     Oakland County VEBA is willing to serve as a representative party in this matter, including providing testimony at deposition and trial, if necessary.  Oakland County VEBA fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.     Oakland Country VEBA's transactions in DexCom securities during the Class Period are reflected in Exhibit A, attached hereto;

5.     Oakland County VEBA sought to serve and was appointed as a lead plaintiff in the following class actions under the federal securities laws filed during the last three years:

*In re Opendoor Technologies Inc. Securities Litigation*, No. 2:22-cv-1717 (D. Ariz.)
*In re Sotera Health Company Securities Litigation*, No. 1:23-cv-0143 (N.D. Ohio)
*Lamontagne v. Tesla, Inc.*, No. 5:23-cv-0869 (N.D. Cal.)
*Genesee County Employees' Retirement System v. Driven Brands Holdings Inc.*, No. 3:23-cv-00895 (W.D.N.C.)

6.     Oakland Country VEBA sought to serve, but was not appointed, as a lead plaintiff in the following class action under the federal securities laws filed during the last three years:

*City of Hollywood Police Officers Retirement System v. Citrix Systems, Inc.*,
No. 0:21-cv-62380 (S.D. Fla.)

7.     Oakland County ERS is currently serving as a representative party on behalf of a class in the following action under the federal securities laws filed during the last three years:

*Oakland County Voluntary Employees' Beneficiary Association v. Generac Holdings Inc.,*
No. 2:22-cv-1436 (E.D. Wis.)

8.      Beyond its pro rata share of any recovery, Oakland County VEBA will not accept payment for serving as a lead plaintiff or representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 7th day of October, 2024.

Signed by:

*Joseph Rozell*
Chairman
Oakland County Voluntary Employees'
Beneficiary Association

**EXHIBIT A**

**TRANSACTIONS IN DEXCOM, INC.**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 06/02/2023 | 377.00 | $122.44 | ($46,158.75) |
| Purchases | 06/09/2023 | 71.00 | $124.18 | ($8,817.01) |
| Purchases | 06/12/2023 | 158.00 | $125.45 | ($19,821.27) |
| Purchases | 06/13/2023 | 24.00 | $127.34 | ($3,056.11) |
| Sales | 06/30/2023 | -244.00 | $128.62 | $31,383.11 |
| Sales | 07/28/2023 | -250.00 | $132.50 | $33,123.93 |
| Sales | 07/31/2023 | -116.00 | $124.95 | $14,494.06 |
| Sales | 07/31/2023 | -135.00 | $129.72 | $17,512.23 |
| Purchases | 09/01/2023 | 104.00 | $101.74 | ($10,581.40) |
| Purchases | 09/05/2023 | 216.00 | $101.29 | ($21,878.94) |
| Purchases | 09/07/2023 | 1,200.00 | $103.26 | ($123,911.52) |
| Purchases | 09/07/2023 | 400.00 | $105.76 | ($42,305.28) |
| Purchases | 09/08/2023 | 400.00 | $104.39 | ($41,755.12) |
| Purchases | 09/11/2023 | 100.00 | $104.30 | ($10,429.87) |
| Purchases | 09/12/2023 | 700.00 | $103.89 | ($72,722.02) |
| Purchases | 09/14/2023 | 900.00 | $102.51 | ($92,254.50) |
| Purchases | 09/15/2023 | 1,200.00 | $98.16 | ($117,796.68) |
| Purchases | 09/18/2023 | 75.00 | $95.58 | ($7,168.23) |
| Purchases | 09/19/2023 | 125.00 | $94.14 | ($11,767.64) |
| Purchases | 09/20/2023 | 150.00 | $92.66 | ($13,898.91) |
| Purchases | 09/21/2023 | 150.00 | $89.44 | ($13,415.42) |
| Purchases | 09/22/2023 | 125.00 | $87.90 | ($10,987.48) |
| Purchases | 09/25/2023 | 375.00 | $85.92 | ($32,220.34) |
| Purchases | 10/04/2023 | 200.00 | $87.33 | ($17,465.00) |
| Purchases | 10/04/2023 | 50.00 | $87.06 | ($4,352.84) |
| Purchases | 10/05/2023 | 100.00 | $81.56 | ($8,156.47) |
| Purchases | 10/05/2023 | 100.00 | $81.69 | ($8,169.00) |
| Purchases | 10/06/2023 | 200.00 | $82.11 | ($16,421.82) |
| Sales | 10/06/2023 | -359.00 | $83.23 | $29,877.78 |
| Sales | 10/06/2023 | -371.00 | $83.18 | $30,859.11 |
| Purchases | 10/12/2023 | 175.00 | $78.88 | ($13,803.21) |
| Purchases | 10/12/2023 | 125.00 | $77.24 | ($9,655.15) |
| Sales | 11/02/2023 | -200.00 | $95.14 | $19,027.86 |
| Purchases | 11/15/2023 | 76.00 | $102.92 | ($7,822.20) |
| Purchases | 11/16/2023 | 48.00 | $104.84 | ($5,032.11) |
| Purchases | 11/16/2023 | 72.00 | $103.87 | ($7,478.88) |
| Purchases | 11/16/2023 | 88.00 | $104.09 | ($9,160.11) |
| Purchases | 11/17/2023 | 4.00 | $105.63 | ($422.50) |

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 11/17/2023 | 17.00 | $105.55 | ($1,794.33) |
| Purchases | 11/17/2023 | 16.00 | $105.87 | ($1,693.92) |
| Sales | 11/20/2023 | -75.00 | $108.99 | $8,174.06 |
| Sales | 11/24/2023 | -125.00 | $113.21 | $14,150.63 |
| Sales | 12/22/2023 | -256.00 | $122.17 | $31,275.52 |
| Purchases | 12/29/2023 | 850.00 | $124.43 | ($105,763.38) |
| Sales | 01/12/2024 | -7.00 | $125.31 | $877.14 |
| Sales | 01/12/2024 | -193.00 | $125.79 | $24,277.14 |
| Sales | 03/28/2024 | -284.00 | $138.70 | $39,390.80 |
| Sales | 04/02/2024 | -280.00 | $136.25 | $38,149.50 |
| Sales | 04/15/2024 | -118.00 | $134.83 | $15,909.63 |
| Sales | 04/16/2024 | -332.00 | $135.76 | $45,071.66 |
| Purchases | 06/06/2024 | 47.00 | $115.22 | ($5,415.34) |
| Purchases | 06/06/2024 | 43.00 | $115.29 | ($4,957.63) |
| Purchases | 06/07/2024 | 452.00 | $115.57 | ($52,236.06) |
| Purchases | 06/07/2024 | 18.00 | $115.49 | ($2,078.82) |
| Purchases | 06/10/2024 | 189.00 | $115.89 | ($21,903.21) |
| Purchases | 06/10/2024 | 234.00 | $115.49 | ($27,024.73) |
| Purchases | 06/11/2024 | 518.00 | $116.55 | ($60,373.11) |
| Purchases | 06/21/2024 | 11.00 | $115.81 | ($1,273.86) |
| Purchases | 06/21/2024 | 4.00 | $115.46 | ($461.86) |
| Purchases | 06/21/2024 | 268.00 | $116.47 | ($31,213.83) |