UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE ALONZO, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>v.<br>DEXCOM INC., et al.,<br>                      Defendants. | Case No.:  24-cv-1485-RSH-VET<br>           24-cv-1804-RSH-VET<br>           24-cv-1809-RSH-VET<br><br>**ORDER ON MOTIONS TO APPOINT LEAD COUNSEL AND LEAD PLAINTIFF AND FOR CONSOLIDATION OF ACTIONS**<br><br>[ECF Nos. 8, 9, 10, 11] |
| OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEMS, et al., individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br>v.<br>DEXCOM INC., et al.,<br>                      Defendants. | |
| MATTHEW CARNES, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>v.<br>DEXCOM INC., et al.,<br>                      Defendants. | |

1    Before the Court are four motions to consolidate, appoint lead counsel, and appoint lead plaintiff filed by movants K. George Thampy ("Thampy"), the Oakland County Voluntary Employees' Beneficiary Association and Oakland County Employees' Retirement System (collectively, "Oakland County"), the Dexcom Investor Group ("Dexcom Group"), and the National Elevator Industry Pension Fund ("the Pension Fund"). ECF Nos. 8; 9; 10; 11.[1] Movants request to consolidate three federal securities class actions, to be appointed as lead plaintiffs, and for their attorneys to be appointed as lead counsel in the consolidated case.

Movants Thampy and Oakland County have since withdrawn or filed non-oppositions to the motions to appoint lead plaintiff and lead counsel. ECF Nos. 13; 16. The Dexcom Group and the Pension Fund oppose each other's motions. ECF Nos. 14; 15. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motions presented appropriate for resolution without oral argument. For the reasons below, the Court grants the motions to consolidate and grants the Pension Fund's motion to appoint lead plaintiff and lead counsel. The Court denies all other competing motions.

I.   BACKGROUND

   A.   Factual Background

The instant actions are federal securities class actions brought on behalf of individuals who purchased or otherwise acquired Defendant Dexcom securities. *See Alonzo v. Dexcom Inc., et al.*, 24cv1485-RSH-VET ("*Alonzo*"), *Oakland County Employees' Retirement Systems et al. v. Dexcom Inc., et al.*, 24cv1804-RSH-VET ("*Oakland*") and *Carnes v. Dexcom Inc., et al.*, 24cv1809-RSH-VET ("*Carnes*") (collectively, the "Related Actions").

Defendant Dexcom Inc. is an "international company that develops, manufactures and distributes continuous glucose monitoring systems for diabetes management." ECF

---

[1]   Unless otherwise specified, all citations to electronic case filing ("ECF") entries reference the entries in *Alonzo v. Dexcom Inc., et al.*, 24cv1485-RSH-VET.

No. 1 ¶ 18. Individual Defendants Kevin Sayer, Jereme Sylvain and Sean Christensen were Dexcom executives during the relevant time period. ECF No. 1 ¶¶ 12–13; *Oakland*, ECF No. 1 ¶¶ 13–15. Plaintiffs are Dexcom shareholders. ECF No. 1 ¶ 10; *Oakland*, ECF No. 1 ¶ 11; *Carnes*, ECF No. 1 ¶ 10.

Plaintiffs allege that between 2023 and 2024, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market through a course of conduct that artificially inflated the price of Dexcom's common stock. ECF No. 1 ¶ 40. Defendants' alleged misrepresentations were directed particularly to Dexcom's rollout of its G7 continuous glucose monitoring system. *Id.* ¶ 19. According to Plaintiffs, the truth was later revealed through a press release announcing disappointing financial results for the second quarter of fiscal year 2024. *Id.* ¶ 4. After the press release, the price of Dexcom's stock declined 40.66% in a single day. *Id.*

### B.  Movants

Movant the Dexcom Group consists of two individual investors—Thilo Sautter and Gang Bao—and the investment entities Mr. Sautter and Mr. Bao manage and oversee. Joint Declaration of Thilo Sautter and Gang Bao ("Dexcom Group Decl.," ECF No. 10-3) ¶¶ 3–4. Mr. Sautter is the Director of CUROS Vermögensverwaltungs GmbH ("CUROS"). Dexcom Group Decl. ¶ 3. Mr. Bao makes investments through his business Sunway Trading USA Inc. ("Sunway") and manages the investments of C-Liu Irrevocable Trust ("C-Liu"), a family trust. *Id.* ¶ 4.

Movant the Pension Fund is a "multiemployer defined benefit pension plan managing more than $4 billion in assets for the purpose of paying benefits to eligible participants and beneficiaries under the terms of the National Elevator Industry Plan of Pension Benefits" based in Newton Square, Pennsylvania. ECF No. 11-1 at 6.[2]

///

///

---

[2]  All page number references are to ECF-generated page numbers.

### C. Procedural Background

The *Alonzo* action was filed on August 21, 2024, the *Oakland* action was filed on October 8, 2024, and the *Carnes* action was filed on October 9, 2024. ECF No. 1; *Oakland*, ECF No. 1; *Carnes*, ECF No. 1. In all three, Plaintiffs assert claims for: (1) violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder; and (2) violation of § 20(a) of the Exchange Act. ECF No. 1 ¶¶ 55–70; *Oakland*, ECF No. 1 ¶¶ 62–70; *Carnes*, ECF No. 1 ¶¶ 55–70. In addition to these class actions, there are two related ongoing derivative actions pending before this Court directed to similar subject matter. *Silva v. Sayer et al.*, 24cv1645-RSH-VET and *Malone v. Sayer et al.*, 24cv1799-RSH-VET.

## II. ANALYSIS

### A. Consolidation

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs securities class actions and provides that a decision on consolidation should be made before a lead plaintiff is selected. *See Kangas v. Illumina, Inc.*, No. 23CV2082-LL-MMP, 2024 WL 1587463, at *1 (S.D. Cal. Apr. 11, 2024); 15 U.S.C.S. § 78u-4(a)(3)(B)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered.").

Under Federal Rule of Civil Procedure 42(a), consolidation is appropriate when the actions involve "a common question of law or fact[.]" Fed. R. Civ. P. 42(a). "A district court generally has 'broad' discretion to consolidate actions." *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008). Here, the Related Actions are all class action lawsuits directed to Defendants' dissemination of allegedly false and misleading statements, particularly with respect to Dexcom's launch of its G7 continuous glucose monitoring system. The causes of action asserted in all three actions are identical. No party opposes consolidation. Although there are minor differences in class periods and

defendants, the Court does not find that these differences outweigh the interests of judicial economy served by consolidation.

The Court concludes consolidation is appropriate under these circumstances. *See Hardy v. MabVax Therapeutics Holdings*, No. 18-CV-01160-BAS-NLS, 2018 WL 4252345, at *1 (S.D. Cal. Sept. 6, 2018) ("'Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.'") (quoting *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018)).

### B.   Appointment of Lead Plaintiff

Under the PSRLA, the district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSRLA "provides a simple three-step process for identifying the lead plaintiff pursuant to these criteria." *Herrgott v. United States Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(A)). "In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the 'presumptively most adequate plaintiff'—and hence the presumptive lead plaintiff—the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* at 729–30 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

///

### *1.    Notice*

"Pursuant to the PSRLA, the first plaintiff to file suit for a securities class action must provide early notice to the class by publicizing the action." *Sayce v. Forescout Techs., Inc.*, No. 20-CV-00076-SI, 2020 WL 4207444, at *5 (N.D. Cal. July 22, 2020). The notice must be published "in a widely circulated national business-oriented publication or wire service" no later than twenty "days after the date on which the complaint is filed" and advise members of the purported plaintiff class: (1) "of the pendency of the action, the claims asserted therein, and the purported class period"; and (2) that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C.S. § 78u-4(a)(3)(A)(i).

Here, the *Alonzo* action—the first of the Related Actions—was filed on August 21, 2024. ECF No. 1. Notice was published on the same day in *Global Newswire* by the law firm Levi & Korinsky, LLP. ECF No. 9-5. The notice identified the purported class period and claims and advised putative class members that they had 60 days from the date of notice—until October 21, 2024—to file a motion to be appointed as lead plaintiff. *Id.* Each of the Movants filed their motions to be appointed as lead plaintiff within the allotted 60-day period. ECF Nos. 8; 9; 10; 11.

For these reasons, the Court concludes the notice requirement has been met and Movants have satisfied the statutory procedural requirements.

### *2.    Financial Interest*

The Court must next determine whether the Dexcom Group or the Pension Fund possesses the "greatest financial stake in the outcome of the case." *In re Cavanaugh*, 306 F.3d at 729.

### *a.    Legal Standard*

"The PSLRA creates a presumption that the most capable plaintiff is the one who in the determination of the court, has the largest financial interest in the relief sought by the class[.]" *Hardy*, No. 18-CV-01160-BAS-NLS, 2018 WL 4252345, at *3 (internal

quotation marks omitted); *see* 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)(bb). To that end, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d at 730.

Neither the PSRLA nor the Ninth Circuit have endorsed any one method of calculating which party has the largest financial interest. *See Moreno v. Marathon Digital Holdings, Inc.*, No. 223CV00470RFBDJA, 2024 WL 1345207, at *2 (D. Nev. Mar. 29, 2024); *Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2020 WL 7025085, at *3 (N.D. Cal. Nov. 30, 2020). Instead, the Ninth Circuit has advised that "the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4.

In calculating which party has the largest financial interest, courts typically consider the *Lax-Olsten* factors, which include: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *see Water Island Event-Driven Fund v. MaxLinear, Inc.*, No. 23-CV-1607-LAB-VET, 2023 WL 8812875, at *3 (S.D. Cal. Dec. 20, 2023); *In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021).

"[T]he weight of authority puts the most emphasis" on the fourth factor—"the competing movants' estimated losses[.]" *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (internal quotation marks omitted); *see Water Island*, 2023 WL 8812875, at *3 ("The greatest emphasis is on the approximate losses suffered."). In calculating losses, courts have employed one of two accounting methods: the First-In-First-Out ("FIFO") or Last-In-First-Out ("LIFO") approach. *See McGee v. Am. Oriental Bioengineering, Inc.*, No. 2:12-CV-5476-SVW-SH, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012). "Under FIFO, the stocks that were acquired first are assumed to be sold first for loss calculation purposes; under LIFO, the last stocks acquired are assumed to be the first sold." *Id.*

### b. *Calculation and Aggregation*

Here, the Parties do not dispute that the Dexcom Group's losses, in the aggregate, are greater than those alleged by the Pension Fund. The Dexcom Group estimates its members collectively suffered losses of approximately $3,050,439.66 using either a FIFO or LIFO analysis. ECF No. 10-7 at 7. In contrast, the Pension Fund asserts it suffered losses of approximately $2,612,043 (based on a FIFO analysis) or $2,365,766 (based on a LIFO analysis). ECF Nos. 11-5 at 2; 18 at 3.

The Parties dispute, however, whether it is appropriate to aggregate the Dexcom Group's losses. The PSRLA expressly contemplates that a "group of persons" may collectively serve as a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). However, the Ninth Circuit has left open the question of whether a "group of persons" may aggregate their financial losses to satisfy the "largest financial interest" requirement. *See In re Cavanaugh*, 306 F.3d at 731 n.8 ("While a 'group of persons' can collectively serve as a lead plaintiff, we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses.") (internal citation omitted).

Courts in the Ninth Circuit differ over the extent to which they will aggregate losses. Some courts "have 'refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Koffsmon v. Green Dot Corp.*, No. CV 19-10701 DDP (EX), 2021 WL 3473975, at *2 (C.D. Cal. Aug. 6, 2021) (quoting *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) ("Although there is no controlling authority on point, the clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses."); *McGee*, 2012 WL 12895668, at *3 ("[M]any courts have refused to aggregate the losses of a group of unrelated persons so that the group can serve as lead plaintiff.").

|   |   |
|---|---|
| 1 | Other courts in the Ninth Circuit "have recognized that it is possible for a group of otherwise unrelated investors to band together to represent the class where the group demonstrates that it is a small, cohesive group that is capable of directing the litigation and acting as a zealous advocate for the class." *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1073 (W.D. Wash. 2011); *see Flannery v. Snowflake Inc.*, No. 24-CV-01234-PCP, 2024 WL 4008764, at *3 (N.D. Cal. Aug. 29, 2024) ("Construing the statute to give preference to the single largest-loss plaintiff over the group of persons with the largest loss would be contrary to the fact the Congress chose to allow groups to be appointed lead plaintiff, which necessarily involves aggregating funds."). |

Here, rather than take any categorical position on the propriety of aggregation, the Court determines issues with the Dexcom Group's composition are better addressed in the Court's Rule 23 analysis. *See Mersho v. United States Dist. Court*, 6 F.4th 891, 901 (9th Cir. 2021) ("Many district courts have considered the lack of a pre-litigation relationship as part of their adequacy analysis at step two because it may indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel."); *In re Origin Materials, Inc.*, No. 2:23-CV-01816 WBS JDP, 2023 WL 8698363, at *2 (E.D. Cal. Dec. 15, 2023) ("[A] court may scrutinize a plaintiff group's 'cohesion' as part of the adequacy analysis at step two[.]"); *Lako v. Loandepot, Inc.*, No. 821CV01449JLSJDE, 2022 WL 1314463, at *4 (C.D. Cal. May 2, 2022) (permitting aggregation but scrutinizing appointment of a group as lead plaintiff under Rule 23); *Xu v. FibroGen, Inc.*, No. 21-CV-02623-EMC, 2021 WL 3861454, at *8 (N.D. Cal. Aug. 30, 2021) (courts may consider "problems associated with artificial groups in their adequacy analysis, both at step two (which requires a prima facie showing of adequacy) and at step three (which permits competing movants to rebut the first movant's prima facie showing)").

### 3. The Dexcom Group

Because the Dexcom Group has the largest financial interest in the litigation, the Court must "focus its attention" on the group "and determine, based on the information

[it] has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *In re Cavanaugh*, 306 F.3d at 730. The Court addresses each of these requirements, in turn, below.

          *a.*      *Typicality*

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). "'The putative lead plaintiff satisfies the typicality requirement when it has suffered the same injuries as absent class members, as a result of the same conduct by the defendants.'" *Kusen v. Herbert*, No. 23-CV-02940-AMO, 2023 WL 8171736, at *6 (N.D. Cal. Nov. 24, 2023) (quoting *In re Extreme Networks Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28, 2016)).

    Here, the Dexcom Group contends it meets the typicality requirement in this case because, like all other purported class members, its members invested in Dexcom securities during the class period at allegedly "artificially distorted" prices and were damaged as a result. ECF No. 10-1 at 12; Dexcom Group Decl. ¶ 5. The Pension Fund argues the Dexcom Group does not meet the typicality requirement because all the Dexcom Group's common stock was acquired pursuant to option contracts *after* the price of Dexcom's stock declined. ECF No. 15 at 12.[3]

    Here, the Court agrees appointing the Dexcom Group—whose losses are *completely* attributable to the exercise of option contracts—raises typicality concerns.

---

[3]    "A put option gives the holder the right to sell an asset at a certain price [(the strike price)] within a specific period of time." *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 98 (D. Conn. 2006). "Upon the sale of a put option, the seller, or writer, becomes obligated to purchase the asset at the strike price if the holder exercises the option." *Id.*

"Parties who . . . only acquire common stock involuntarily when put options they have written are exercised—are simply differently situated from parties who engage in—and whose losses predominantly derive from—ordinary common-stock transactions." *Jaramillo v. Dish Network Corp.*, No. 23-CV-00734-GPG-SKC, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023); *see Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 2:20-CV-00368-JNP-DBP, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021) ("[T]he price and value of a single share of common stock is very different from the price and value of a single call option. The options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value."). If the Court were to appoint the Dexcom Group as lead plaintiff for the entire class, factual issues specific to the Dexcom Group "in determining the precise value of the options—e.g., the maturity, the volatility of the price of the [Dexcom] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded" could "become the focus of the litigation." *Andrada v. Atherogenics, Inc.*, No. 05 CIV. 00061 (RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (internal quotation marks omitted).

For these reasons, the Court is not satisfied the Dexcom Group has made a *prima facie* showing of typicality. *See Menashe v. Biogen Inc.*, No. CV 20-10399JVS(KSX), 2021 WL 5533455, at *4 (C.D. Cal. Feb. 24, 2021) (reasoning movants "may not have claims typical of the class, particularly owing to the fact that its investors engaged in options trading."); *In re Stitch Fix*, 393 F. Supp. 3d at 836 (denying lead plaintiff motion where movant sold only options during class period); *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("[B]ecause [movant] traded only in options, the court holds that [movant] should not be appointed lead counsel.").

    b.  *Adequacy*

Adequacy is determined by resolving "two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 566 (9th Cir. 2019) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "Under the PSLRA, the district court must essentially do this analysis twice." *Mersho*, 6 F. 4th at 900. "At step two, it will consider whether the movant has made a prima facie showing of adequacy." *Id.* "At step three, it will consider whether competing movants have offered proof that the presumptive lead plaintiff will not adequately represent the class." *Id.* A district court has "latitude as to what information it will consider in determining typicality and adequacy." *Id.*

Here, the Court has multiple concerns as to whether the Dexcom Group would be an adequate lead plaintiff. First, the manner in which the Dexcom Group was formed "raises the specter of a group of unrelated individuals brought together by counsel solely for the purpose of aggregating losses in order to surpass the financial interests of any other applicant." *Frias*, 835 F. Supp. 2d at 1074; *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, No. 20-CV-0966-AJB-DEB, 2021 WL 533518, at *5 (S.D. Cal. Feb. 12, 2021) ("When unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

Mr. Sautter and Mr. Bao's joint declaration confirms there was no pre-existing relationship between group members prior to communication with counsel. Mr. Sautter and Mr. Bao declare they independently consulted with their respective counsel to assess their "financial interests" in the case and subsequently "expressed an interest in working together with other likeminded investors in seeking joint Lead Plaintiff appointment." Dexcom Group Decl. ¶ 8. The Dexcom Group was then formed after "multiple telephone and email communications" with counsel. *Id.* Mr. Sautter and Mr. Bao state they then participated in only a single joint telephone call to discuss, among other things, their "strategy for prosecuting the action" and "interests" in doing so "in a collaborative and likeminded manner" before filing their motion. *Id.* ¶ 10. The Court is wary of appointing a lead plaintiff group that is connected "by nothing more than one joint call[.]" *In re*

*Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *7 (N.D. Cal. Dec. 16, 2019) (internal quotation marks omitted); *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018).

      This is also not a case where any constituent member of the Dexcom Group suffered losses exceeding the interests of the other movants. *See Koffsmon v. Green Dot Corp.*, No. CV 19-10701 DDP (EX), 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021) (collecting cases where courts have based their appointment of a lead plaintiff group "upon the fact that one individual member of the proposed group, even standing alone, had a greater financial interest than any other proposed lead plaintiff."). Here, none of the Dexcom Group's losses exceed that of the Pension Fund. *See* ECF No. 15 at 9. Indeed, even were the Court to aggregate the losses of Mr. Sautter and his affiliated entities or Mr. Bao and his affiliated entities together, their losses would not exceed those of the Pension Fund. *Id.*

      Second, the Dexcom Group provides little information on how its members would jointly manage the case. Mr. Sautter and Mr. Bao declare that the Dexcom Group is a "small, coordinated group of investors" and that both understand the "importance of joint decision-making." Dexcom Group Decl. ¶¶ 10–11. However, "[t]hese types of generalities have little or no substance and do not further the position of this otherwise unrelated group of individuals as an adequate class representative." *Frias*, 835 F. Supp. 2d at 1075; *In re Stitch Fix*, 393 F. Supp. 3d at 836 (declining to appoint lead plaintiff group where declarations were "conclusory and cursory" and indicated only that the group members had "exchanged a few calls and emails with each other since being introduced by their common lawyer."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008) ("Simply stated, this conclusory declaration has little or no substance.").

      For these reasons, the Court is also not satisfied the Dexcom Group has made a *prima facie* showing of adequacy.

///

### c. Conclusion

Under these circumstances, where the Dexcom Group losses are wholly attributable to the exercise of option contracts and the record is devoid of any pre-existing relationship between the group's members, the Court denies the Dexcom Group's request to be appointed as lead plaintiff.

### 4. The Pension Fund

The Court next considers whether the Pension Fund qualifies as "the presumptively most adequate plaintiff." *In re Cavanaugh*, 306 F.3d at 730 ("If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.").

Here, the Court finds that for purposes of lead plaintiff appointment, the Pension Fund has made a sufficient *prima facie* showing of typicality and adequacy. The Pension Fund is a single sophisticated, institutional investor with experience participating as a lead plaintiff in at least one other securities class action. *See* ECF No. 11-1 at 6–7. Like other members of the purported class, the Pension Fund alleges it purchased Dexcom common stuck during the Class Period in reliance upon Defendant's purported false and misleading statements and suffered damages as a result. There is no indication of any conflicts between the Pension Fund and other class members. Nor is there any evidence that the Pension Fund is subject to any unique defenses. None of the other movants have submitted or pointed to any evidence rebutting the adequacy of the Pension Fund's representation or the typicality of its claims.[4] For these reasons, the Court appoints the

---

[4] The only objection the Dexcom Group makes to the Pension Fund is in the Pension Fund's calculation of financial losses. ECF No. 14 at 15–16. As the Pension Fund explains, however, any alleged "discrepancy" was the result of the Pension Fund using a FIFO methodology rather than a LIFO methodology is calculating losses. ECF No. 18 at 3. The Pension Fund has since submitted briefing calculating its losses under both methods. *Id.*

Pension Fund as lead plaintiff.

C. **Appointment of Lead Counsel**

The PSRLA provides that after the court has appointed a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009). The Pension Fund has selected and retained Robbins Geller LLP. ECF No. 11-1 at 8–9. In light of the firm's lengthy and substantial experience in securities class action litigations, the Court **APPROVES** the Pension Fund's choice of Robbins Geller LLP has lead counsel.

III. **CONCLUSION**

For the reasons above, the Court **ORDERS** as follows:

1. The Court **GRANTS** the Movant's motions for consolidation. The following cases are hereby consolidated for all purposes, subject to the terms of this Order, under Case No. 24-cv-1485-RSH-VET (the "Consolidated Action"): *Alonzo v. Dexcom Inc., et al.*, 24cv1485-RSH-VET, *Oakland County Employees' Retirement Systems et al. v. Dexcom Inc., et al.*, 24cv1804-RSH-VET and *Carnes v. Dexcom Inc., et al.*, 24cv1809-RSH-VET.

2. Every pleading filed in the Consolidated Action shall bear the following caption:

| IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION | Lead Case No.: 24-cv-1485-RSH-VET |
|---|---|
| This Document Relates to:<br><br>ALL ACTIONS | |

3.   All future documents filed in connection with the Consolidated Action shall be filed under Lead Case No. 24-cv-1485-RSH-VET. All documents previously filed and/or served in the Related Actions shall be deemed a part of the record in the Consolidated Action.

4.   The Court **GRANTS** the Pension Fund's motion for appointment of lead plaintiff and lead counsel and **APPOINTS** the Pension Fund as lead plaintiff and Rob Robbins Geller LLP as lead counsel in the Consolidated Action. ECF No. 11. The Court denies all other competing motions for appointment of lead plaintiff and lead counsel. ECF Nos. 8, 9, 10.

5.   The Pension Fund shall file a consolidated complaint by no later than **December 27, 2024**. Defendants shall respond to the consolidated complaint by no later than **January 17, 2025**.

IT IS SO ORDERED.

Dated: December 13, 2024

_____
Hon. Robert S. Huie
United States District Judge